Hear ye, hear ye. The United States Court of Appeals for the Sixth Circuit is now in session. All persons having business before this honorable court draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Case number 20-1063, Azam Rahimi v. Rite Aid Corporation. Argument not to exceed 15 minutes per side. Mr. Peter A. Patterson, you may proceed for the appellant. Good afternoon. Mr. Patterson, you may proceed. Thank you, Your Honor, and may it please the court, Pete Patterson for the appellant Rahimi. The district court's decision in this case must be reversed for two independent reasons. First, there was no public disclosure of the fraud underlying Rahimi's complaint. And second, even if there were, Rahimi was an original source of the information in his complaint. I'll start with the public disclosure. There are two and only two ways that the government may be put on notice of fraud for purposes of public disclosure bar. First, there's either a public disclosure with allegations of fraud against the defendant, or second, there's a public disclosure that describes transactions that reveal both the state of facts as they are alleged to be and the true state of facts from which fraud can be inferred. Neither is present here. First, there were zero allegations of fraud against Rite Aid in the public domain before this case was filed. That distinguishes- How about the press release by the Connecticut Attorney General? Yes. Yes, Your Honor. Thank you. Yeah, the press release from the Connecticut Attorney General did not accuse Rite Aid of failing to provide the Connecticut Medicaid with its usual and customary prices. In fact, in contrasting that with the press release concerning CVS, which was issue in the Winkleman case in the First Circuit, which itself is an outlier decision, the press release against CVS expressly stated that CVS, in the Connecticut Attorney General's view, was required to pass along its club discount prices to Connecticut Medicaid even before the change in law explicitly requiring that. The absence of such an allegation against Rite Aid in the Connecticut Attorney General's press release leads to the inference, if one were looking at those two next to each other, that there was no similar concern about Rite Aid's behavior before the change in law. And in fact, finding fraud based on that press release would contravene this court's decision in Poteet, which at footnote six expressly stated that numerous media reports of a government investigation of the very fraud that was at issue in that case did not suffice to amount to a public disclosure. The much less explicit public disclosure here necessarily cannot amount to fraud. Indeed, as I've said, the public disclosure here did not even purport to allege that Rite Aid was not in full compliance with its requirements under Connecticut law, much less the law across the rest of the nation. And it is clear also from this court's precedent in Holloway that allegations of fraud against a particular member of an industry cannot be used to infer fraud against other members of the industry absent allegations of industry-wide fraud. And there were no allegations of industry-wide fraud here. Indeed, the Connecticut Attorney General's press release concerning CVS at page ID 3115 expressly recognized that other pharmacies were passing along their discount program prices to Connecticut Medicaid. The same goes for other materials that Rite Aid relies upon. The article about Walgreens in Minnesota specifically states that other pharmacies were passing along their prices. And the same goes for the Garvey complaint concerning Kmart. So there was... Could you pause and explain a little bit about the language that was in the Connecticut announcement about Rite Aid and why you believe you cannot see in that an accusation of the press release for Rite Aid says the law requires pharmacies to provide Medicaid and other state programs the same prescription drug discounts they offer consumers. Apparently in response, Rite Aid increased prices. I mean, there they're saying, is he not? That you're not complying with the law. That Rite Aid was not complying with the law. No, they're not. He's not, Your Honor. And I'll explain both this day, the Connecticut law before that press release and after. Before that press release, the law was that the usual and customary price in Connecticut was the price given to the largest number of non-Medicaid, non-third-party payer prescriptions. So essentially the largest number of cash customers. And there is nothing in the public domain that indicates that the largest number of Rite Aid's cash customers were in the RX Savings Program. That was not a foregone conclusion. The Safeway case that Rite Aid sites here indicates that Safeway only had about a 20% take up on its discount program in the Phoenix area and that company-wide only about 26.9% of prescriptions were at discount prices. So none of that was in the public domain. And then this press release states that in response to the new law, which expressly stated that Rite Aid had to extend its, and all other pharmacies had to extend its discount pricing to the government, that Rite Aid increased its prices. There is no allegation either before that change or after that change that Rite Aid is not behaving properly. The only improper behavior that is alleged against Rite Aid is that it is falsely using this new law as an excuse to increase prices. So there are a couple inferences that could be drawn from that. One possibility is that Rite Aid is just using the new law as a pretext to increase the prices, both that it's providing to Connecticut Medicaid and to everyone else on its RX savings programs that Connecticut AG expressly said Rite Aid was falsely pointing to this new law. And that leads to an important point with the second method of having a public disclosure of fraud. And that is when both the true state of facts and the false state of facts is in the public domain, that is termed the X plus Y equals Z test. And what's very important about that is this court's precedent makes clear that when the X and the Y are revealed in public disclosures, the fraud can be inferred. So you can infer from X and Y to Z, the fraud. There is no support for inferring to X and Y, which is what Rite Aid is asking you to do here. You have to make two inferences in order to find a public disclosure here of facts that are nowhere in public domain. One is that a majority of Rite Aid's cash paying customers are paying the RX savings prices. And two is that Rite Aid is not reporting its RX savings prices as its usual and customary prices to government payers. And neither of those facts was in the public record before Rahimi filed his complaint here. And the absence of either one of them defeats the public disclosure. How do you respond to the argument that you added details that might be important, but that are, I know this is kind of in the original source argument, but the argument being these details do not show that it was not already in the public domain. It just adds color and emphasis and more information. What is your response to that? Well, our response is that there is nothing in the public domain. So we're not adding details. We are putting the scheme in the public for the first time. This scheme was not in any way, shape or form in the public record before we filed the suit. And quickly, as I see my time is running down, on the original source, I wanted to note that this court's decision in MAR last month, M-A-U-R, that's 981 F.3 F-16 at note three, essentially adopted our assertion that the Rockwell decision in the United States Supreme Court abrogated this court's rule that the, in order to qualify as an original source, the relator would have to. Yes, the time it issued. So the time now the notification must come before the filing of the complaint under the pre-2010 FCA, MAR recognized that. And the important distinction, and this gets back to your question, Judge Stranz, is that for the pre-2010 claims, in order to be an original source, you do not need to materially add to what's in the public domain. You just need to have direct and independent knowledge. It's only- Isn't materiality implied in the pre-2010 statute? I mean, materiality is, you know, it's like relevancy. If it's not relevant, it's not material. It really isn't, you know, it's not important. It's not admissible. So, I mean, doesn't materiality just, it's not expressed in the statute prior to 2010, but isn't it implied? It is not, Your Honor. And in fact, MAR cited to the DC Circuit's decision in Davis, which specifically made this point that said before the amendment, the law was maybe a little material, but there was no materiality requirement. And they amended the law in 2010 specifically to add a materiality requirement. So, pre-2010, if you were an original source, you could bring those claims regardless that they added to what was already in the public domain, which changed after we submit, we qualify under either test. And I see my time is up. I see you reserve five minutes to buttle. Thank you. Mr. Peterson. Thank you. May it please the court, William Peterson on behalf of the Applee Rite Aid Corporation. Your Honor, the factual elements of Rahimi's claims were publicly disclosed before he filed suit, and he does not qualify as an original source. The district court correctly held that these claims in this non-intervened case are barred by the public disclosure bar. And we'd ask that the judgment below be affirmed. Let me start where my friend did. Let me back up with a practical question. If there was so little in the information that they provided to the government, why did the government continually get extensions over a long period of time, rather than just saying to this plaintiff, you don't have anything, we don't need you? Your Honor, it's unclear. I don't believe it appears in this record. Certainly, the government is entitled to take its time to conduct its own investigation. But the government did ultimately decide that these claims were not worth intervening in to protect. And that's the reason the public disclosure bar applies. Well, sometimes and sometimes the government is engaged with relators and working and using information from relators to make agreements with the charged party or to collect further information. So it begs the question a little to say in the end, they decided they don't need you. Well, that's certainly true, Your Honor. There are many reasons the government might have made its decision. But I don't believe there's any suggestion here that government's delay would affect the application of the public disclosure bar in this case. Okay. So explain why there was sufficient information in this Connecticut different state announcement about its own laws. Why would that have any control over a different state's claims or a relator with different issues? Certainly, Your Honor, there are a few components to that question. So let me start with the first, which is I think my friend has stepped away from the complaint in his description of his claims. You heard him talking, I think a reference to the majority of customers paying a particular price. If you look in the briefing before the district court, that is not the allegation that has been made. I'll point you particularly to say paragraph three of the amended complaint, talking about pharmacies must charge Medicaid their usual and customary prices to the general public, taking into account any discounted prices, not the customers pay, but that quote, the pharmacy makes available to the general public. You can see this again, paragraph 27 of the complaint to say across the nation, every Medicaid program of each state requires pharmacies to build no more than the price that the pharmacy usually and customarily makes available to members of the general public. The term that necessarily includes defendants, RX savings program. I can continue going through the complaint, but the point is you won't find anything in the complaint that says this price was Rite What you see is Rahimi consistently saying in the complaint, in his response to the motion to dismiss that pharmacies have a usual and customary price when they offer it or make it available to their customers. Just briefly again, Rahimi's response, this is docket 62, the first page of it to the motion to dismiss the second amended complaint. Rite Aid failed to report its RSP price quote, even though it offers these discounted prices to other customers. And here's a summary. When a pharmacy like Rite Aid offers discounted prices to customers enrolling in a membership club, those prices become the pharmacies, UNC. Now this is important. And there's a reason that my friend is attempting to import this number of customers paid requirement into the claims because under the allegations in the complaint, this Connecticut law did not in any way change Rite Aid's obligations. As alleged in the complaint, because Rite Aid offered and made available its RSP price to members of the public, that price became Rite Aid's usual and customary price. So Rahimi's theory, at least in the district court, has consistently been both before Connecticut passed its new law and after Connecticut passed its new law, Rite Aid had precisely the same legal obligation. That is Rite Aid was required to offer its RSP price to Connecticut Medicaid. So when we see in response to Connecticut law, Rite Aid making changes to its program, and I'll point you, I like the Connecticut governor's press release, that's exhibit 19 to page 104. And you have governor Rell explaining that Rite Aid is reacting to Connecticut's law by making changes to its discount program in Connecticut, quote, to avoid across the board discounts to Medicaid and the general public. So the idea, again, if Rahimi's legal theory is correct, and Rite Aid had exactly the same obligation, pre-Connecticut law and post-Connecticut law, then there's absolutely no reason that Rite Aid would have had any response to that law whatsoever. So the fact that Rite Aid is having to respond to this law in Connecticut to avoid discounts to Medicaid demonstrates, as the district court correctly recognized, that prior to Connecticut passing this law, Rite Aid was not charging its RSP price to Connecticut Medicaid. If it had been, Rite Aid wouldn't have had to have done anything in response to the new law. Unless what, unless what Rite Aid was trying to do was to climb on the back of this new law to increase its prices. Well, you can certainly speculate that you can there, you could imagine, I think, what my friend has said is, well, maybe this wasn't true. Maybe the public disclosures were lies, but that's not how the public disclosure bar operates. You know, the public disclosure, what's disclosed in the news media is that Rite Aid is reacting to the law by changing prices in Connecticut to avoid these discounts to Medicaid that it would otherwise be provided. And I don't think a relator can come in and evade the public disclosure bar by saying, well, sure, that's what the public disclosure says. But we think that maybe you shouldn't really believe the public disclosure. Maybe we can speculate that the public disclosure is false. So the district court here recognized that just the same as with CVS, the reaction to the new law disclosed that prior to Connecticut passing this law, Rite Aid was doing something different. Rite Aid was not previously providing its RSP price to Connecticut Medicaid. And I'll point you, my friend suggested that the disclosures with respect to CVS only said that Connecticut was required to pass on its discount club price. It's exhibit two to document 109, believe the fifth paragraph down, state law requires pharmacies to charge Medicaid the offered consumers. Now it was specifically stated with respect to CVS, but the state never suggested that only CVS had to charge the lowest price that offered consumers. The state has consistently said this is a rule that applies to all pharmacies. Now that's with respect to Connecticut. You can also go past Connecticut and the disclosure in other states as well. And again, the key here is that Rahimi is alleging a consistent nationwide scheme by a national company to do factually exactly the same thing in every jurisdiction with respect to a common requirement. As the complaint makes clear, this usual and customary requirement is a consistent requirement across jurisdictions. This is a condition of a state obtaining federal reimbursement. One of these requirements is that the state must pay no more than the dispensing pharmacies, usual and customary charge to the general public. And again, Rahimi says in every state, that usual and customary charge was no more than right, the RSP price being offered for these drugs. So what you have in effect is a relator saying, yes, it's been perhaps it's been disclosed that Rite Aid did this in Connecticut, but I can come in and evade the public disclosure bar simply by saying, we think that factually you did exactly the same thing in every jurisdiction with respect to a common requirement. And that is not somehow the same allegation or transaction. And I think this is where the Holloway decision supports Rite Aid very nicely. Holloway was a case where it had been publicly disclosed there were allegations in a South Carolina complaint against a particular hospice facility. And the relator suggested, well, it's not just one hospice facility. It's a corporate wide scheme. And this court readily concluded in Holloway that that was not enough to get past the public disclosure bar. You can't simply say, and I think you did exactly the same thing in other jurisdictions as well. It's the same thing here, taking the allegations factually about what Rite Aid did in Connecticut and suggesting we think Rite Aid did exactly the same thing in other jurisdictions. There's no actions by Rite Aid in other jurisdictions and no suggestion that there's any legally material difference between these state programs. I don't think that my friend is going to concede that Rite Aid acted lawfully in any of the states. So to the extent there are differences in the definition of UNC, they're not material. The essence of the complaint is that in every state, we were required to treat our RSP price as our usual and customary price. What level of publication, talking about this concept in general, what level of publication would you say is necessary when one state issues one press release? I guess maybe the governor also, maybe there were two there, and thus bind relators across the nation? Your Honor, it's not a question of binding relators. It's a question of providing notice to the government, of giving the government notice on fraud and preventing someone who doesn't have any original information from filing a parasitic KETAM lawsuit. The public disclosure bar has a broad sweep. And recall, KETAM actions are unusual. They're intended to reward insiders, whistleblowers. No, they're actually intended to be certain that people have a reason to put out the information and come forward to assist the government in collecting money that is improperly taken from it. And we know that distinction because of the change that the law made early on that resulted in almost, in a significant drop of recovered monies by the false claimers, and now we're not getting enough claimers. So the goal of this is to encourage people to come forward and aid the government in collecting what's rightfully its own, right? Yes, Your Honor, that's certainly true. Now, keep in mind, though, if the government believes it's been deprived of something of its own, it can certainly intervene. And also, we have the an original source of the information. This sort of public disclosure isn't going to bar it. The reason it's barred here, and let me turn with my remaining time to the original source requirement, is that Mr. Rahimi is not in any way a typical KETAM relater. He is not a Rite Aid insider. He is not a whistleblower. He doesn't have any personal knowledge regarding Rite Aid. And if I can point to just one document here, I think the key to the original source argument is the district court's order dismissing the second amended complaint on 12b6 grounds, because Rahimi's second amended complaint was based on his knowledge. Rahimi tried to base his second amended complaint on what he knew on what he brought to the table. The district court considered that, and what the district court realized was that just looking at what Mr. Rahimi knew, he could not plausibly state a claim. The information that he disclosed to the government before he filed suit, and this is docket 70 by the way, it wasn't about any sort of false claim submitted by Rite Aid to a government program. All of the information that he submitted before he filed suit was about receipts relating to consumer transactions. He didn't actually even identify any claims that were submitted, and on page 10 he noted that Rahimi doesn't have personal specific knowledge of the scheme. What changed between the second and third amended complaints was that several states gave Rahimi information. They gave him records of claims that were actually submitted to Rite Aid, but without that additional information that he received from the states, without actual claims that the states and not Rahimi provided, he couldn't plausibly state a claim that would survive dismissal under Rule 12b6. That more than anything else is an indication of why he could not be an original source. Judge Griffin, you asked about whether materiality is inherent in the pre-amendment bar, and I think it absolutely is. I'd look at this court's decision in Antoon versus Cleveland Clinic. It's not just about having direct and independent knowledge of something. It's about having direct and independent knowledge of the essential elements of the claims. The 2010 amendments liberalized the rights to bring suit, and by saying there's a materiality component pre-2010 but not before, is kind of contrary to what Congress was trying to liberalize the cause of action, because it'd be tougher to qualify that it's got to be material now, but it wasn't material before then. I mean, that doesn't make any sense, for one thing. That's absolutely correct, that if he cannot qualify as an original source under the liberalized post-2010 original source test, he certainly can't qualify under the pre-2010 test. One last point with respect to the majority of customers paying a certain price, if you look at Mr. Rahimi's 104, he does not say anything about the price paid by a particular number of customers. He's not disclosing any information to the government about how many customers pay a particular price. From start to finish below, this case was about the price offered to consumers. For those reasons... Mr. Patterson, you're out of time, but if you want to just wrap it up, it's 30 seconds or so. Or have you have you wrapped it up already? Peter? I was just going to say, for those reasons, if the panel has no further questions, we'd ask the judge. Judge Batchelder, do you have any questions? I don't think so. A couple that I had have been asked and answered, so thank you. All right, very good. And Mr. Patterson, you have five minutes rebuttal. Yes, thank you, Your Honor, for a few points I'd like to make. First, it is simply not true that we are saying for the first time on appeal that the percentage of members in the ARC Savings Program matters. At paragraph 93 of our complaint, that's page ID 1361, we expressly state that 90 to 95 percent of cash-paying customers were enrolled. That's the reason why this is the UNC price everywhere. We say in paragraph 94 that there are unique requirements in each state, but it's because it was so prevalent that it was met, and we specifically quoted paragraph 33 in the complaint, the language of Connecticut's requirement that it's the largest number of non-Medicaid prescriptions. So there's no way we even could have made that allegation, given that language in Connecticut's law, Nevada's law, which is also in the complaint, has similar language. And in our response to the third motion to dismiss at page ID 2758, we specifically state that, quote, the essential elements of Rite Aid's fraud, end quote, included that, again, quoting, Rite Aid's RX savings prices were charged to approximately 90 percent of cash-paying customers, end quote. So we've said that that is an essential element of our claim all along. And the reason why obscure that is because there is absolutely nothing in the public domain that would reveal that fact, and that alone defeats Rite Aid's entire case here. Opposing counsel cited the governor press release. That was along the same lines as the Connecticut Attorney General press release. The governor said that, it says, Governor M. Jody Rell today announced she called for review into an increase of prescription drug prices at Rite Aid pharmacies after the drug store chain made key changes to its customer RX savings discount program by erroneously claiming that the higher prices and reduced benefits were required by state law. So it's consistent. The across government officials were saying that Rite Aid was falsely using this law to increase its Rite Aid was using this as a pretext. One inference would be that they were not passing along the laws or the prices when the law didn't expressly allow it. But under the X, Y, plus Z equation, as I've said, the only inference that is allowed is to Z, to the fraud. You cannot infer to the X or the Y, to the underlying facts, which is what Rite Aid is asking you to do. How about the inspector general's announcement in 2010, that he was looking into large chain pharmacies billing Medicaid, not billing them the usual and customary charges for drugs in view of their discount program. So how about the inspector general's announcement? How do you challenge? Yes, Your Honor, that was just an announcement of a potential work plan. It mentioned Rite Aid. It doesn't say that any pharmacy is not properly doing this. Those were never actually done. They're not in the investigations part of that report. And again, I mentioned Poteet footnote six in my opening. That's very important because this court expressly said that numerous media reports of the government investigating the very fraud that was alleged in the complaint did not suffice to trigger the public disclosure bar. If that was true in Poteet, then that knocks out the Connecticut disclosure. It knocks out the disclosure, the OIG disclosure, Your Honor just mentioned. So under binding precedent here, those cannot be used to find a public disclosure. Counsel, could I ask a question here? What is the import of the fact that from the beginning of Rite Aid's savings program back, I think, in 2008, its own advertisements and announcements said that prescriptions that are paid for by publicly funded programs, which I would assume everyone would agree would include Medicaid, aren't eligible for the discounted drug prices, the Rx discount program. What's that mean? Your Honor, it doesn't mean much here. Rite Aid itself had said that that had nothing to do that statement with what Rite Aid billed to Medicare or Medicaid. And in fact, private insurance companies have had similar complaints against Rite Aid just about a week and a half ago. The Delaware Superior Court in a case called Evolve Pharmacy Solutions versus Rite Aid Headquarters, it's that 2021 Westlaw 140919 rejected Rite Aid's motion to dismiss on a fraudulent concealment claim, saying that those public disclosures should have put this private insurance company on notice, that it was not reporting the savings club prices to this private insurer as its usual and customary prices. And the Delaware Superior Court refused to confirm Rite Aid's arguments on a motion to dismiss. I see my time is up. I'm happy to answer any additional questions your honors may have. Otherwise, we ask for reversal in this case. Any further questions, Judge Batchelder? No. Judge Scranch? Thank you. All right. Thank you, counsel, for your arguments this afternoon. The case will be submitted. You may call the next case.